IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| RONALD L. BALLOU, | ) | 4:15CV3106 |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| MICHAEL L. KENNEY, et al., | ) | |
| Defendants. | ) | |

This matter is before the court on initial review of Ronald L. Ballou's Complaint (Filing No. 1) and Motion to Amend Complaint (Filing No. 13). For the reasons discussed below, the court finds that Ballou's Complaint does not sufficiently allege failure-to-protect or failure-to-train claims. On the court's own motion, Ballou will be provided an opportunity to file an amended complaint.

## I. SUMMARY OF COMPLAINT

Ballou brings this action under 42 U.S.C. § 1983, against numerous employees of the Nebraska Department of Correctional Services. He alleged that on or about April 15, 2014, he was incarcerated at the Nebraska State Penitentiary ("NSP"), where he was assaulted by another inmate. Ballou alleged the other inmate was a "violent and notorious" member of the Sureno 13 gang. Following the assault, Ballou resided in the protective-custody unit of the NSP. (Filing No. 1 at CM/ECF p. 2.)

Ballou claims that his treatment plan included a provision suggesting that he undergo residential substance-abuse treatment. Thus, later in 2014, prison officials informed Ballou that his custody would be transferred to the Tecumseh State Correctional Institution ("TSCI") where he would receive residential substance-abuse treatment. Ballou claims he was informed he would be safe at the TSCI and separated from gang members, but he later learned that he would not be separated from gang

members. (Filing No. 1 at CM/ECF p. 9.) Ballou did not explain how he obtained this information.

On October 11, 2014, Ballou addressed an inmate interview request to Defendant Sheryl Tyrrell ("Tyrrell"). Ballou asked Tyrrell to change his treatment recommendation so that he would not have to transfer to the TSCI because he feared he would be assaulted there. Tyrrell responded that she had no authority to change the treatment recommendation and advised him to address his request to Defendant Dan Sherman ("Sherman") or Defendant Natalie Sluka ("Sluka"). (Filing No. 1 at CM/ECF p. 27.)

On October 18, 2014, Ballou addressed an inmate interview request to Sherman and Sluka. He stated he wanted to comply with the treatment recommendation—substance-abuse treatment at the TSCI—because he was concerned his failure to undergo treatment prior to his parole hearing would result in denial of parole. However, he was concerned about gangs "controlling who walks yards and gets treatment." Ballou "beg[ged]" them to consider allowing him to complete some other form of treatment. On October 21, 2014, Sherman responded by advising Ballou that he could refuse substance abuse treatment at the TSCI and needed only to sign a refusal form. (Filing No. 1 at CM/ECF p. 30.)

On February 23, 2015, "within a matter of hours" of arriving at the TSCI, Ballou was assaulted by four Sureno 13 inmate-gang members. (Filing No. 1 at CM/ECF pp. 11-12.) Ballou suffered a concussion, a fractured nose, a wound on the back of his skull, and another on his forehead, and he was taken to the emergency room for treatment. (Filing No. 1 at CM/ECF p. 3.) Ballou alleged this assault occurred in
"clear view" of Defendant Johnson, but Johnson did not see the assault. (Filing No. 1 at CM/ECF p. 14.)

Ballou alleged that, prior to being transferred to the TSCI, he "tried to stop his transfer [] by notifying" Defendant Richter, "but his plea went unheard." (Filing No. 1 at CM/ECF p. 3.) Ballou did not explain how he tried to stop his transfer or what information he provided to Richter.

For relief, Ballou seeks declaratory and monetary relief, including an award of punitive damages. (Filing No. 1 at CM/ECF p. 24.)

## II. STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must

3

be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III. DISCUSSION OF FEDERAL-LAW CLAIMS

Ballou asserted two classes of claims arising under federal law: failure-to-protect claims and failure-to-train claims. Therefore, the court must consider whether Ballou has sufficiently alleged a claim that (1) defendants failed to protect him from harm, and (2) a failure to train resulted in constitutional violations.

### A.  Failure to Protect

A prison official is deliberately indifferent if he "knows of and disregards" a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 837, (1994). There is both an objective component and a subjective component to a claim of deliberate indifference: (1) whether a substantial risk to the inmate's safety existed, and (2) whether the officer had knowledge of the substantial risk to the inmate's safety but nevertheless disregarded it. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citing *Davis v. Oregon Cnty., Mo.*, 607 F.3d 543, 548 (8th Cir. 2010)). The subjective component requires that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must also draw the inference. *Id.* Deliberate indifference includes something more than

4

negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk. *Id.*

### 1. Michael Kenney, Scott Frakes, Diane Sabatka-Rine, Dorton, Furby, Michelle Capps, and John Does 1-4

Ballou did not allege any of these individuals were *personally* involved in the incidents underlying his failure-to-protect claims. See *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (holding that court properly dismissed a pro se complaint where the complaint did not allege that defendant committed a specific act and the complaint was silent as to defendant except for his name appearing in caption)). Therefore, Ballou's Complaint fails to state a claim upon which relief may be granted against Kenney, Frakes, Sabatka-Rine, Dorton, Furby, Capps, and John Does 1-4.

To the extent Ballou suggests any of these individuals should be liable as prison supervisors, his claims fail because *respondeat superior* is not a basis for liability under 42 U.S.C. § 1983. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (finding that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability).

### 2. Sheryl Tyrrell, Dan Sherman, and Natalie Sluka[1]

Ballou's Complaint fails to state a claim upon which relief may be granted against Tyrrell, Sherman, and Sluka. His allegations reflect that, months before Ballou's transfer to the TSCI, Ballou advised Tyrrell, Sherman, and Sluka he was concerned he may not be safe at the TSCI. But his statements about a potential risk of harm were general and he did not articulate a specific reason he feared transfer to

---

[1] The court will direct the clerk of the court to update the court's records to reflect that this defendant's name is Natalie Sluka, not Natalie Slv-Ka.

the TSCI, as opposed to some other institution. Moreover, he did not ask Tyrrell, Sherman, or Sluka to prevent his transfer to the TSCI. Rather, he asked them to change his treatment recommendation. To this, Sherman advised Ballou that he could refuse transfer to the TSCI. These allegations do not suggest that Tyrrell, Sherman, or Sluka had any intent to allow Ballou to be harmed, knowledge that Ballou would be harmed, or a reckless disregard of a known risk to Ballou's health and safety. *See Farmer*, 511 U.S. at 825. As such, based on the facts alleged, Ballou has not stated a failure-to-protect claim against Tyrrell, Sherman, or Sluka.

### 3. Rosalyn Cotton

Ballou alleged that, on March 18, 2015, Cotton, as chair of the Nebraska Board of Parole, advised Ballou that he would not receive an earlier offender board review. (Filing No. 1 at CM/ECF p. 52.) The court fails to see how this allegation states any sort of claim for relief against Cotton.

### 4. Brian Gage

Ballou alleged that after he was assaulted at the TSCI, he submitted an informal grievance to prison staff complaining about his "unheaded warnings" about his safety. Gage responded to this grievance but "failed to adequitly [sic] address the issues." (Filing No. 1 at CM/ECF p. 12.)

Prisoners do not have a constitutional right to a prison grievance procedure. *Lomholt v. Holder*, 287 F.3d 683 (8th Cir. 2002). Thus, Gage's failure to properly respond to a grievance, standing alone, is not actionable under § 1983.

### 5. Johnson

Ballou alleged his assault at the TSCI occurred in Johnson's "clear view", but he did not see it due to his "negligence and lack of duty." (Filing No. 1 at CM/ECF p. 14.) Allegations of mere negligence are insufficient to state a failure-to-protect claim. *Reynolds*, 636 F.3d at 979. Ballou's allegations do not reflect Johnson had any intent to allow Ballou to be harmed, knowledge that Ballou would be harmed, or a reckless disregard of a known risk to Ballou's health and safety. As such, he has not stated a failure-to-protect claim upon which relief may be granted against Johnson.

### 6. Richter

Ballou alleged that, prior to being transferred to the TSCI, he "tried to stop his transfer [] by notifying" Defendant Richter, "but his plea went unheard." (Filing No. 1 at CM/ECF p. 3.) Ballou did not explain how he tried to stop his transfer or what information he provided to Richter. Without additional factual allegations, the court cannot evaluate whether Richter was deliberately indifferent to a substantial risk of serious harm to Ballou.

## B. Failure to Train

Ballou's Complaint suggests he intended to raise a failure-to-train claim against the defendants, but he alleged no facts to support such a claim (*See* Filing No. 1 at CM/ECF pp. 15-16.)

As already discussed in this order, a supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a *respondeat superior* theory. *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001). Rather, a supervisor's liability arises if "a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Id.* (quoting *Andrews v. Fowler*, 98

7

F.3d 1069, 1078 (1996). Such a claim "requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Id.*

Ballou offered no facts to suggest any of the named defendants had notice that training procedures and supervision were inadequate at the TSCI or that they somehow failed to remedy a known risk of harm. Rather, he offered only threadbare recitals of the elements of a failure-to-protect claim. Such claims are insufficient to state a claim upon which relief may be granted. *See Iqbal*, 556 U.S. at 678.

### IV. LEAVE TO AMEND

On the court's own motion, the court will give Ballou 30 days in which to file an amended complaint that states federal-law claims upon which relief may be granted against the defendants. Any amended complaint will supersede Ballou's original complaint. Thus, Ballou must not incorporate any part of the original complaint. That is, the amended complaint must stand on its own. To avoid confusion, any document Ballou submits to the clerk of the court for filing in this case must clearly display the case number

### V. STATE-LAW CLAIMS

Ballou also sued the defendants for violations of state law. At this point in the proceedings, the court makes no determination as to the validity of these claims or whether the court has jurisdiction over them.

IT IS THEREFORE ORDERED that:

1. On the court's own motion, Ballou will have 30 days in which to file an amended complaint that states federal-law claims upon which relief may be granted.

Ballou must clearly designate on the face of the document that it is his amended complaint. In addition, to avoid confusion, the amended complaint must clearly display the case number.

2. The clerk of the court is directed to set the following pro se case management deadline: March 7, 2016: check for amended complaint.

3. The court will conduct further review of any amended complaint filed in this case to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915 and 1915A.

4. Ballou's Motion to Amend Complaint (Filing No. 13) is denied as moot in light of the foregoing.

DATED this 4th day of February, 2016.

BY THE COURT:

*s/ John M. Gerrard*
United States District Judge